IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT JOHNSON | * | |
| 608 N. Carrollton Street | | |
| Baltimore, Maryland 21217 | * | |
| | | |
| TREQUELL RICE | * | Civil Action No.: |
| 7 Gilmore Street | | |
| Glen Burnie, Maryland 20161 | * | |
| | | |
| DARIUS OLIVER | * | |
| 820 Sunnyfield Lane | | |
| Brooklyn, Maryland 21225 | * | |
| | | |
| and | * | |
| | | |
| RASSHAN PEE | * | |
| 1509 Appleton Street | | |
| Baltimore, Maryland 21217 | * | |
| | | |
| Plaintiffs | * | |
| | | |
| v. | * | |
| | | |
| NPL CONSTRUCTION CO. | * | |
| 19820 North 7th Avenue, Suite 120 | | |
| Phoenix, Arizona 85027 | * | |
| | | |
| SERVE ON: | * | |
| | | |
| National Registered Agents, Inc. of Md. | * | |
| 2405 York Road, Suite 201 | | |
| Lutherville, Maryland 21093 | * | |
| | | |
| Defendant | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF

Preliminary Statement

1.      This is an action under of the Civil Rights Act of 1964 ("Title VII") and under the Civil Rights Act of 1991, 42 U. S. C. § 1991(a), as amended for Plaintiff Robert Johnson, and under the Civil Rights Act of 1866 ("Section 1981"), as amended, 42 U.S.C. Section 1981 for all of the plaintiffs for *inter alia*, injunctive relief, compensation for lost wages and benefits, and other injuries, losses and compensatory, pecuniary and punitive damages caused by NPL Construction Co.'s (hereinafter "Defendant") intentional acts of race discrimination and/or retaliation.

Jurisdiction

2.      Plaintiff Robert Johnson has received notice of his right of action against Defendant, issued pursuant to his filing of the charge of unlawful racial discrimination with the United States Equal Employment Opportunity Commission.  A copy of Plaintiff Robert Johnson's Notice of Right to Sue is attached hereto as Exhibit "A" and is incorporated herein by reference.

3.      This is a civil action brought by Plaintiff Robert Johnson under § 706(n) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e-5(f), which confers original jurisdiction on this Court over all actions authorized by Title VII of the Civil Rights Act of 1964.

4.      This is a civil action brought by all of the plaintiffs which confers original jurisdiction upon this Court pursuant to 28 U. S. C. §§ 1331, 1343(3) and (4), 2201 and 2202.

Venue

5.      Venue lies with this Court because some or all of the parties reside in the State of Maryland, and because the actions and conduct underlying Plaintiffs' causes of action occurred in the State of Maryland.  Defendant conducts business in Maryland.

2

<u>Plaintiffs</u>

6.      Plaintiff Robert Johnson, (hereinafter "Plaintiff Johnson"), is a black, African American citizen of the United States of America and a resident of Baltimore, Maryland.

7.      Plaintiff Trequell Rice, (hereinafter "Plaintiff Rice"), is a black, African American citizen of the United States of America and a resident of Baltimore, Maryland.

8.      Plaintiff Darius Oliver, (hereinafter "Plaintiff Oliver"), is a black, African American citizen of the United States of America and a resident of Baltimore, Maryland.

9.      Plaintiff Rasshan Pee, (hereinafter "Plaintiff Pee"), is a black, African American citizen of the United States of America and a resident of Baltimore, Maryland.

<u>Defendant</u>

10.      Defendant is an employer as defined in Section 701(b) of the Civil Rights Act, 42 U. S. C. § 2000e(b) in that it affects commerce and employs at least fifteen (15) persons for each working day at least twenty (20) calendar weeks in the applicable year(s). Defendant, at all times mentioned herein, was acting through its agents, servants, and employees.

<u>Facts</u>
(As to Plaintiff Robert Johnson)

11.      Plaintiff Johnson began his employment with the Defendant on or about November 3, 2018. He has been employed as a Laborer.

12.      During his employment with Defendant, Plaintiff Johnson has been a conscientious, dedicated and competent employee.

13.      Since November 2018 until present, Plaintiff Johnson has been discriminated against and harassed based on his race (African American) and his color (black) and/or retaliated against by NPL management including Ron Davidson, John Worley and others.

3

14.     Mr. Davidson's and Mr. Worley's barrage of harassment included, among others, the following statements and actions directed at Plaintiff Johnson:

      a.  Called Plaintiff Johnson a "monkey" on a regular basis.

      b.  Called Plaintiff Johnson "boy" on a regular basis.

      c.  Referred to more than one black employee as "boys" on a regular basis.

      d.  Referred to black employees as "nigger" or "niggers" on a regular basis.

      e.  Referred to black employees as "nigger turtle" or "nigger turtles" on a regular basis because according to them black workers are slow.

      f.  In or around February and March 2019, Mr. Davidson battered Plaintiff Johnson by grabbing his ass and penis.  Mr. Davidson stated during the February assault, "your ass belongs to me." Before these assaults occurred, Mr. Davidson said that "20 years ago when [he] was in the navy, a black guy sucked [him] off when [he] was sleeping and [Mr. Davidson] enjoyed it and it confused [him] sexually. And that's why [he doesn't] like being around your kind." '[K]ind' being a reference to black people.  Plaintiff Johnson reported this battery to management, but was told he was stuck with Mr. Davidson for life.

      g.  On or about April 29, 2019, Mr. Davidson told Plaintiff Johnson "You get shot on your job, NPL won't pay for your funeral." On or about May 7, 2019, Mr. Davidson then stated, in front of Plaintiff Johnson, "I need to bring in a gun and smoke a nigger." This was a clear threat to kill Plaintiff Johnson.

      h.  Defendant's supervisors allowed white co-workers to work longer hours than Plaintiff Johnson resulting in less pay.

15.     The aforesaid comments, statements and actions by Rodney Davidson and/or John Worley are examples of the racial harassment and discrimination to which Plaintiff Johnson was subjected.   These types of comments and actions were made, and continued, over Plaintiff Johnson's objections, up until Mr. Davidson was finally terminated after the May 7, 2019 assault.   These types of comments and actions were also made in front of other Defendant employees including other supervisors beginning in November 2018. Plaintiff Johnson was

subjected to this hostile work environment for over five months before Defendant took any action and only because Mr. Davidson threatened to kill Plaintiff Johnson.

16.     After Mr. Davidson's termination, Mr. John Worley (white / Caucasian), the new Baltimore Lead Foreman, stated to Plaintiff Johnson, "I do not care" that Mr. Davidson discriminated against him.

17.     Mr. Worley was a friend of Mr. Davidson's.  On or about May 25, Mr. Worley called a "team huddle," and in front of a number of witnesses stated to Plaintiff Johnson, directly (in substance):  "nothing good comes from West Baltimore but losers, lazy food stamp recipients, and you [i.e., Plaintiff Johnson].  Who are you going to go tell that to?  I don't give a shit, and I got a whole lot of guns and I will blast anybody from West Baltimore who doesn't like it."

18.     On or about May 25, Plaintiff Johnson was told by Plaintiff Johnson's supervisor, Foreman Wilson, that he would be starting his fitters' class the first week of June.  Later, Plaintiff Johnson was told by Mr. Worley, "no," that had been changed – Plaintiff Johnson would not be starting his fitters' class at that time.  Mr. Worley (and Defendant NPL) continued, stating to Plaintiff Johnson (in substance):  'Robert, I'm going to be honest with you, I already decided to enroll my boy, the white kid, Jerod [Karrot].'  Plaintiff Johnson responded by stating that was unfair and racist.  Mr. Worley and Defendant NPL responded (in substance):  'life isn't fair, deal with it.'  Mr. Worley also stated that he didn't care about who Plaintiff Johnson told.  Mr. Worley (and Defendant NPL) also stated to Plaintiff Johnson that he (Mr. Worley) was pissed about Mr. Davidson (his buddy) getting fired, and "watch your back."

19.     On or about June 14, 2019, Plaintiff Johnson filed an initial Charge of

5

Discrimination with the U.S. EEOC (cross-filed with the Maryland Commission on Civil Rights).

20.    Mr. Worley's wrongful treatment of Plaintiff Johnson occurred on a virtual daily basis, when they worked.  Mr. Worley would repeatedly order Plaintiff Johnson out of the driver's seat of the work vehicle, allowing Mr. Austin Robinson (white) to drive, even though Plaintiff Johnson had signed out the truck and was responsible for it.  When Plaintiff Johnson asked Mr. Worley why he continually did this, Mr. Worley responded, 'because I can.'  Moreover, a witness stated to Plaintiff Johnson that Mr. Worley told the witness that he (Mr. Worley) didn't want Plaintiff Johnson driving because he is black, and that Mr. Worley hoped Plaintiff Johnson would get fed-up and quit.  Further, Mr. Worley frequently threatened to "write-up" Plaintiff Johnson, on sham grounds.  As to foregoing matters, Plaintiff Johnson reported such matters to Greg Trejo, NPL Superintendent – nothing meaningful was done in response.  Additionally, Plaintiff Johnson spoke to Ms. Janice Clark, NPL HR, seeking a transfer to resolve the situation.  Again, nothing meaningful happened, in response.

21.    On or about July 24, 2019, while on the job site (in South Baltimore), Mr. Worley attempted to run Plaintiff Johnson over with a work truck.  Plaintiff Johnson was just able to move out of the way, to avoid being struck.  Mr. Worley then exited the truck, and stated to Plaintiff Johnson (in substance):   "Robert, you better watch your ass."  Plaintiff Johnson expressed concern about being hit by Mr. Worley with the truck; Mr. Worley stated in response to Plaintiff Johnson (in substance):   "don't worry about me, just stay the fuck out of my way."  Later that day, Plaintiff Johnson returned to the work yard; Mr. Worley stated to Plaintiff Johnson (in substance): 'hey guys, guess what?  Ron

Davis[1] wants to buy one of my ghost guns, you know who he's going to use it on? Robert Johnson."  In response, one of the workers stated (in substance), 'if something happens with that gun, that's on you, Worley.'  Mr. Worley responded:  'that's why it's a "ghost gun".'[2]

22.     Plaintiff Johnson reported the foregoing incident to Defendant on or about July 25, 2019. Defendant's manager Mr. DeFino responded, by stating that he and Defendant NPL would transfer Plaintiff Johnson to another crew, give Plaintiff Johnson 2 days off (paid), and he (Mr. DeFino) would speak to Mr. Worley.  When Plaintiff Johnson questioned why he (the victim) had to be transferred, Mr. DeFino responded that Mr. Worley (white) was "more valuable" to Defendant NPL than Plaintiff Johnson. Plaintiff Johnson further stated to Mr. DeFino that he still had concerns with Mr. Worley's involvement with Mr. Davidson (now terminated), to provide a 'ghost gun' for purposes of shooting Plaintiff Johnson.  Plaintiff Johnson stated to Mr. DeFino that he feared for his life.  Mr. DeFino and Defendant NPL assured Plaintiff Johnson (inaccurately) that Mr. Worley "would not bother" him anymore.  Mr. DeFino also told Plaintiff Johnson that he did not have to attend the kick off meetings located at the yard in order to avoid having any future contact with John Worley.

23.     Notwithstanding, Mr. Worley continued to racially harass Plaintiff Johnson almost every time Mr. Worley saw Plaintiff Johnson at job sites (away from the yard) by calling him "boy".

24.     As of April 2021, Defendant continues to harass/retaliate against Plaintiff

---

[1]   Mr. Worley identifying "Ron Davis," in this manner, is a reference to Rodney Davidson.

[2]   A 'ghost gun' is a firearm without serial numbers (e.g., usually, where the serial

Johnson by threatening him with disciplinary action if he does not attend kick off meetings at the yard even though John Worley is present at the yard.

25.     As a result of Defendant's discrimination and retaliation, Plaintiff Johnson has suffered and continues to suffer severe emotional distress, mental anguish, humiliation, depression, and loss of income.

<u>Facts</u>
(As to Plaintiff Trequell Rice)

26.     Plaintiff Rice began his employment with the Defendant in or around August 2017. He had been employed as a Pipefitter.

27.     During his employment with Defendant, Plaintiff Rice had been a conscientious, dedicated and competent employee.

28.     Since shortly after Plaintiff Rice's date of hire until his resignation in or around January 2020, Plaintiff Rice had been discriminated against and harassed based on his race (African American) and his color (black) by his Defendant NPL supervisors Rodney Davidson and John Worley.

29.     Mr. Davidson's and Mr. Worley's barrage of harassment included, among others, the following statements and actions directed at Plaintiff Rice or in Plaintiff Rice's presence:

     a.  Called Plaintiff Rice and/or other black employees "boy" or "boys" on a regular basis.

     b.  Referred to black employees as "nigger" or "niggers" on a regular basis.

     c.  Referred to black employees as "nigger turtle" or "nigger turtles" on a regular basis because according to them they were black and slow.

     d.  Spoke in ghetto language when speaking with Plaintiff Rice such as calling him a "Yo" or referring to more than one black person as "yos".

number has been removed).

e.  Mr. Davidson would state "master's comin" when he would approach black employees.  If Mr. Worley was with Mr. Davidson, Mr. Worley would then make the sound of a whip cracking.

30.    The aforesaid comments, statements and actions by Rodney Davidson and/or John Worley are examples of the racial harassment and discrimination to which Plaintiff Rice was subjected.  These types of comments and actions were made by Mr. Davidson, and continued, over Plaintiff Rice's objections, up until Mr. Davidson was finally terminated in May 2019. These types of comments and actions were made by Mr. Worley, and continued, over Plaintiff Rice's objections, up until Mr. Rice resigned from the job in January 2020.  These types of comments and actions were also made in front of other Defendant employees including other supervisors beginning in 2017. Plaintiff Rice was subjected to this hostile work environment throughout his employment.

<u>Facts</u>
(As to Plaintiff Darius Oliver)

31.    Plaintiff Oliver began his employment with the Defendant in or around August/September 2018. He had been employed as a Laborer.

32.    During his employment with Defendant, Plaintiff Oliver had been a conscientious, dedicated and competent employee.

33.    Since shortly after Plaintiff Oliver's date of hire until his resignation in or around February 2019, Plaintiff Oliver had been discriminated against and harassed based on his race (African American) and his color (black) by Defendant NPL supervisors Rodney Davidson and John Worley.

34.    Mr. Davidson's and Mr. Worley's barrage of harassment included, among others, the following statements and actions directed at Plaintiff Oliver or in Plaintiff Oliver's presence:

9

a. Called Plaintiff Oliver and/or other black employees "boy" or "boys" on a regular basis.

b. Referred to black employees as "nigger" or "niggers" on a regular basis.

c. Referred to black employees as "nigger turtle" or "nigger turtles" on a regular basis because according to them they were black and slow.

d. Called Plaintiff Oliver a "monkey" on a regular basis.

e. Spoke in ghetto language when speaking with Plaintiff Oliver such as calling him a "Yo" or referring to more than one black person as "yos".

f. Mr. Davidson would state "master's comin" when he would approach black employees.

g. When they were working in parts of Baltimore City, Mr. Davidson would ask, "do you all live in this shithole?" During these times, Mr. Davidson would also state "these people around here are animals."

h. When black people employees were digging in the dirt with a shovel, Mr. Davidson would say "pick that dirt for me boy."

35. The aforesaid comments, statements and actions by Rodney Davidson and/or John Worley are examples of the racial harassment and discrimination to which Plaintiff Oliver was subjected. These types of comments and actions were made by Mr. Davidson and Mr. Worley, and continued, over Plaintiff Oliver's objections, up until Mr. Oliver's constructive discharge. These types of comments and actions were also made in front of other Defendant employees including other supervisors beginning in August/September 2018. Plaintiff Oliver was subjected to this hostile work environment throughout his employment.

36. Defendant's supervisors allowed white co-workers to work longer hours than Plaintiff Oliver resulting in less pay.

Facts
(As to Plaintiff Rasshan Pee)

37. Plaintiff Pee began his employment with the Defendant in or around

10

September 2018. He had been employed as a Laborer.

38.     During his employment with Defendant, Plaintiff Pee had been a conscientious, dedicated and competent employee.

39.     Since shortly after Plaintiff Pee's date of hire until his forced resignation in or around February 2019, Plaintiff Pee had been discriminated against and harassed based on his race (African American) and his color (black) by Defendant NPL supervisors Rodney Davidson and John Worley.

40.     Mr. Davidson's and Mr. Worley's barrage of harassment included, among others, the following statements and actions directed at Plaintiff Pee or in Plaintiff Pee's presence:

   a. Called Plaintiff Pee and/or other black employees "boy" or "boys" on a regular basis.

   b. Referred to black employees as "nigger" or "niggers" on a regular basis.

   c. Referred to black employees as "nigger turtle" or "nigger turtles" on a regular basis because according to them they were black and slow.

   d. Called Plaintiff Pee a "monkey" on a regular basis.

   e. Spoke in ghetto language when speaking with Plaintiff Pee such as calling him a "Yo" or referring to more than one black person as "yos".

   f. Mr. Davidson would state "the master is comin" when he would approach black employees.

   g. When they were working in parts of Baltimore City, Mr. Davidson would ask, "do you all live in this shithole?" During these times, Mr. Davidson would also state "these people around here are animals."

   h. When black people employees were digging in the dirt with a shovel, Mr. Davidson would say "pick that dirt for me boy."

41.     The aforesaid comments, statements and actions by Rodney Davidson and/or John Worley are examples of the racial harassment and discrimination to which Plaintiff Pee was

subjected.  These types of comments and actions were made by Mr. Davidson and Mr. Worley, and continued, over Plaintiff Pee's objections, up until Plaintiff Pee's constructive discharge. These types of comments and actions were also made in front of other Defendant employees including other supervisors beginning in or around his date of hire in 2018. Plaintiff Pee was subjected to this hostile work environment throughout his employment.

42.     Defendant's supervisors allowed white co-workers to work longer hours than Plaintiff Pee resulting in less pay.

<u>Injunctive Relief</u>

43.     The need to enjoin Defendant, its agents and employees from depriving Plaintiffs and other black, African American persons of equal employment opportunities is paramount.  Section 706(g) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e(g), empowers this Court to permanently enjoin the Defendant from any and all violations of the rights that Plaintiffs herein seek to assert under Title VII of the Civil Rights Act of 1964, as amended and Section 1981.

**<u>COUNT ONE</u>**
**Violation of Title VII**
**(Racial Discrimination - Plaintiff Johnson)**

44.     Plaintiff Johnson incorporates herein by this reference paragraphs 11 through 25 and makes them a part of this, Count One, as though fully set forth herein.

45.     The Plaintiff suffered intentional discrimination because of his race.

46.     Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race.

47.     The above discriminatory acts by the Defendant, its agents and employees violate Title VII.

48.     As a direct and proximate result of Defendant's conduct, Plaintiff Johnson has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT TWO
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Johnson)

49.     Plaintiff Johnson incorporates herein by this reference paragraphs 11 through 25 and makes them a part of this, Count Two, as though fully set forth herein.

50.     The Plaintiff suffered intentional discrimination because of his race.

51.     Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race.

52.     The above discriminatory acts by the Defendant, its agents and employees violate Section 1981.

53.     As a direct and proximate result of Defendant's conduct, Plaintiff Johnson has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT THREE
### Violation of Title VII
### (Racial Discrimination - Plaintiff Johnson)

54.     Plaintiff Johnson incorporates herein by this reference paragraphs 11 through 25 and makes them a part of this, Count Three, as though fully set forth herein.

55.     Defendant, its agents and employees have discriminated against Plaintiff Johnson by racially harassing Plaintiff Johnson and by failing to implement and enforce a sufficient policy against racial harassment.  These practices of discrimination against Plaintiff Johnson are in direct violation of his rights guaranteed by Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.

56.     Defendant's agents and employees' conduct was unwelcome.

57.     The conduct was based on Plaintiff Johnson's race.

58.     The conduct was sufficiently severe or pervasive to alter the Plaintiff's working conditions of employment and to create an abusive working environment.

59.     The conduct was imputable on some factual basis, as outlined in the complaint, to Defendant.

60.     As a direct and proximate result of Defendant's conduct, Plaintiff Johnson has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

### COUNT FOUR
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Johnson)

61.     Plaintiff Johnson incorporates herein by this reference paragraphs 11 through 25 and makes them a part of this, Count Four, as though fully set forth herein.

62.     Defendant, its agents and employees have discriminated against Plaintiff Johnson by racially harassing Plaintiff Johnson and by failing to implement and enforce a sufficient policy against racial harassment.  These practices of discrimination against Plaintiff Johnson are in direct violation of his rights guaranteed by Section 1981.

63.     Defendant's agents and employees' conduct was unwelcome.

64.     The conduct was based on Plaintiff Johnson's race.

65.     The conduct was sufficiently severe or pervasive to alter the Plaintiff's working conditions of employment and to create an abusive working environment.

66.     The conduct was imputable on some factual basis, as outlined in the complaint, to Defendant.

67.     As a direct and proximate result of Defendant's conduct, Plaintiff Johnson has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT FIVE
### Violation of Title VII
### (Retaliation – Plaintiff Johnson)

68.     Plaintiff individually realleges and incorporates by reference paragraphs 11 through 25 into this Count Five as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff was retaliated against in violation of the provisions of Title VII for engaging in the protected activity of notifying the Defendant that he opposed the racial discrimination and harassment to which he was subjected.

69.     Defendant directly and/or by and through its employees intentionally, with malice and reckless indifference to its obligations under Title VII, retaliated against the Plaintiff for filing internal racial discrimination complaints as well as a charge with the Equal Employment Opportunity Commission.

70.     The retaliatory conduct the Plaintiff was subjected to constitutes an adverse employment action because the terms and conditions of Plaintiff's employment were affected and was causally linked to his filing internal and external racial discrimination complaints.

71.     The retaliatory action taken against the Plaintiff constitutes an adverse employment action and altered the terms, conditions and privileges of his employment with the Defendant.

72.     Defendant and its employees were fully aware of the retaliation against the Plaintiff detailed herein.

73.     Defendant could have and should have taken steps that would have prevented the deprivation of the Plaintiff's rights caused by this retaliation.

74.     As a direct and proximate result of this retaliatory action, the Plaintiff has suffered pain, mental anguish, embarrassment and humiliation; and economic damages.

**COUNT SIX**
**Violation of Section 1981**
**(Retaliation – Plaintiff Johnson)**

75.     Plaintiff individually realleges and incorporates by reference paragraphs 11 through 25 into this Count Six as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff was retaliated against in violation of the provisions of Section 1981 for engaging in the protected activity of notifying the Defendant that he opposed the racial discrimination and harassment to which he was subjected.

76.     Defendant directly and/or by and through its employees intentionally, with malice and reckless indifference to its obligations under Section 1981, retaliated against the Plaintiff for filing internal racial discrimination complaints as well as a charge with the Equal Employment Opportunity Commission.

77.     The retaliatory conduct the Plaintiff was subjected to constitutes an adverse employment action because the terms and conditions of Plaintiff's employment were affected and was causally linked to his filing internal and external racial discrimination complaints.

78.     The retaliatory action taken against the Plaintiff constitutes adverse employment action and altered the terms, conditions and privileges of his employment with the Defendant.

79.     Defendant and its employees were fully aware of the retaliation against the Plaintiff detailed herein.

80.     Defendant could have and should have taken steps that would have prevented the deprivation of the Plaintiff's rights caused by this retaliation.

81.     As a direct and proximate result of this retaliatory action, the Plaintiff has suffered the loss of his prior employment position and has suffered pain, mental anguish, embarrassment and humiliation; and economic damages.

## COUNT SEVEN
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Rice)

82.     Plaintiff Rice incorporates herein by this reference paragraphs 26 through 30 and makes them a part of this, Count Seven, as though fully set forth herein.

83.     The Plaintiff suffered intentional discrimination because of his race.

84.     Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race.

85.     The above discriminatory acts by the Defendant, its agents and employees violate Section 1981.

86.     As a direct and proximate result of Defendant's conduct, Plaintiff Rice has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT EIGHT
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Rice)

87.     Plaintiff Rice incorporates herein by this reference paragraphs 26 through 30 and makes them a part of this, Count Eight, as though fully set forth herein.

88.     Defendant, its agents and employees have discriminated against Plaintiff Rice by racially harassing Plaintiff Rice and by failing to implement and enforce a sufficient policy against racial harassment.  These practices of discrimination against Plaintiff Rice are in direct violation of his rights guaranteed by Section 1981.

89.     Defendant's agents and employees' conduct was unwelcome.

17

90.     The conduct was based on Plaintiff Rice's race.

91.     The conduct was sufficiently severe or pervasive to alter the Plaintiff's working conditions of employment and to create an abusive working environment.

92.     The conduct was imputable on some factual basis, as outlined in the complaint, to Defendant.

93.     As a direct and proximate result of Defendant's conduct, Plaintiff Rice has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT NINE
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Oliver)

94      Plaintiff Oliver incorporates herein by this reference paragraphs 31 through 36 and makes them a part of this, Count Nine, as though fully set forth herein.

95.     The Plaintiff suffered intentional discrimination because of his race.

96.     Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race.

97.     The above discriminatory acts by the Defendant, its agents and employees violate Section 1981.

98.     As a direct and proximate result of Defendant's conduct, Plaintiff Oliver has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT TEN
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Oliver)

99.     Plaintiff Oliver incorporates herein by this reference paragraphs 31 through 36 and makes them a part of this, Count Ten, as though fully set forth herein.

100.     Defendant, its agents and employees have discriminated against Plaintiff Oliver by racially harassing Plaintiff Oliver and by failing to implement and enforce a sufficient policy against racial harassment.  These practices of discrimination against Plaintiff Oliver are in direct violation of his rights guaranteed by Section 1981.

101.     Defendant's agents and employees' conduct was unwelcome.

102.     The conduct was based on Plaintiff Oliver's race.

103.     The conduct was sufficiently severe or pervasive to alter the Plaintiff's working conditions of employment and to create an abusive working environment.

104.     The conduct was imputable on some factual basis, as outlined in the complaint, to Defendant.

105.     As a direct and proximate result of Defendant's conduct, Plaintiff Oliver has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

## COUNT ELEVEN
### Violation of Section 1981
### (Racial Discrimination - Plaintiff Pee)

106.     Plaintiff Pee incorporates herein by this reference paragraphs 37 through 42 and makes them a part of this, Count Eleven, as though fully set forth herein.

107.     The Plaintiff suffered intentional discrimination because of his race.

108.     Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race.

109.     The above discriminatory acts by the Defendant, its agents and employees violate Section 1981.

110.     As a direct and proximate result of Defendant's conduct, Plaintiff Pee has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

**COUNT TWELVE**
**Violation of Section 1981**
**(Racial Discrimination - Plaintiff Pee)**

111.    Plaintiff Pee incorporates herein by this reference paragraphs 37 through 42 and makes them a part of this, Count Twelve, as though fully set forth herein.

112.    Defendant, its agents and employees have discriminated against Plaintiff Pee by racially harassing Plaintiff Pee and by failing to implement and enforce a sufficient policy against racial harassment.  These practices of discrimination against Plaintiff Pee are in direct violation of his rights guaranteed by Section 1981.

113.    Defendant's agents and employees' conduct was unwelcome.

114.    The conduct was based on Plaintiff Pee's race.

115.    The conduct was sufficiently severe or pervasive to alter the Plaintiff's working conditions of employment and to create an abusive working environment.

116.    The conduct was imputable on some factual basis, as outlined in the complaint, to Defendant.

117.    As a direct and proximate result of Defendant's conduct, Plaintiff Pee has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.


**PRAYER FOR RELIEF**

WHEREFORE, cause having been shown, each Plaintiff demands judgment against Defendant and respectfully prays that this Court grant the following relief for each Plaintiff:

    a.    An Order permanently enjoining and restraining Defendant, its agents, officers, servants and employees from discriminating against other employees based on their race and/or color;

20

b.      Compensation for back pay, front pay, and compensation for other lost

employment benefits in an amount to be later determined;

c.      Costs and reasonable attorneys' fees;

d.      Compensatory and punitive damages in the amount of Three Hundred

Thousand Dollars ($300,000.00) for each Title VII claim and Three

Million Dollars ($3,000,000.00) for each Section 1981 claim; and

e.      Any and all additional relief as the Court may deem just and proper.


Respectfully submitted,

**MALLON LLC,**


_____/s/ Joseph T. Mallon, Jr._____

Joseph T. Mallon, Jr. (Fed. Bar No. 22878)
Marshall N. Perkins (Fed. Bar No. 25514)
Suite 815
300 East Lombard Street
Baltimore, Maryland 21202
(410) 727-7887
Fax:  (410) 727-4770
jmallon@mallonllc.com
mperkins@mallonllc.com

*Attorneys for Plaintiffs Johnson, Rice, Oliver,
and Pee*